<hr />

(4 Misc. Rep. 180.)

LEVY v. RUFF.

(Common Pleas of New York City and County, General Term. June 5, 1893.)

1. REAL-ESTATE AGENTS—ACTION FOR COMMISSIONS.
    Where a broker employed to sell lands finds a purchaser who is willing and able to take the property on the terms offered by the seller, he is entitled to his commissions, though a written contract of sale is not executed.

2. SAME—ABILITY OF PURCHASER.
    When the proposed purchaser was at the time of the signing of the contract of sale ready to make the payment then due, the broker is not required to show that such purchaser had sufficient funds on hand at that time to make the final payment. 22 N. Y. Supp. 744, affirmed.

Appeal from city court, general term.

Action by Simon Levy against Caroline Ruff for broker's commission on sale of real estate. From a judgment of the general term of the city court (22 N. Y. Supp. 744) affirming a judgment for plaintiff, defendant appeals. Affirmed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Fromme Bros., for appellant.
David Leventritt, for respondent.

BOOKSTAVER, J. This action was brought by plaintiff to recover commissions as real-estate broker in procuring a purchaser of certain property in Allen street, for the defendant. There is little conflict of testimony as to the facts. The employment of plaintiff by defendant is uncontradicted. It is also undisputed that, while the original price named by the defendant for her premises was $28,000, and the original offer of Mr. Fine, the proposed purchaser, conceded to have been found by the plaintiff, was only $26,-000, after some bargaining and negotiation Mr. Fine raised his offer to $27,000, and that this offer was accepted by the defendant, as she admits, and $50 was immediately paid by Mr. Fine to defendant as a deposit, and that thereupon defendant executed a contract drawn up by her daughter, and witnessed by both the daughter and the broker, which, although very inartificially drawn, we think indi-

cates with sufficient clearness the terms of the sale. Pursuant to the terms of such informal agreement, the parties met at the office of C. Dexheimer, defendant's lawyer, on December 28, 1891, and it is uncontradicted that on this occasion Mr. Fine was ready and willing to enter into a contract embodying the terms agreed upon in this informal contract, but that defendant, in pursuance of Mr. Dexheimer's advice, refused to sign any contract for the sale of her property in accordance with that agreement. Mr. Dexheimer advised the defendant not to sign any contract unless she was paid her full equity in the property, notwithstanding the informal contract had provided for a second mortgage of $4,000 to be taken back by the seller. There were also some other differences at that time, but we think that the purchaser was in no fault, and was ready, willing, and able to complete the contract according to the terms of the agreement between them, and that plaintiff's commissions were then and there earned. When a broker employed to effect a sale has found a purchaser willing to take upon the terms named and of sufficient responsibility, he has performed his contract, and is entitled to the commissions agreed upon. Duclos v. Cunningham, 102 N. Y. 678, 6 N. E. Rep. 790. It was not necessary that a written contract of sale should have been entered into between the parties in order to entitle the plaintiff to his commission. It was sufficient if the plaintiff had found a proposed purchaser, ready and willing to enter into such a contract. And even where there has been an oral agreement on the terms of a real-estate bargain, with the intention of reducing it to writing, but before the contract was so reduced the owner has receded from the agreement, it has been repeatedly held that he was nevertheless liable for broker's commissions. Barnard v. Monnot, *42 N. Y. 203; Krahner v. Heilman, (Com. Pl. N. Y.) 9 N. Y. Supp. 633; Kalley v. Baker, 132 N. Y. 1, 29 N. E. Rep. 1091; Gilder v. Davis, 137 N. Y. 506, 33 N. E. Rep. 599. In this case there was not only an oral agreement, but that agreement had been reduced to writing, somewhat inartificially, it is true, yet with sufficient definiteness to witness the bringing of the minds of the parties together, and an agreement for the purchase and sale of the property, and also its terms. The fact that the plaintiff subsequently met the defendant at Mr. Doll's office, and endeavored to procure a new contract or another contract between the same parties, or one substituted in the place of Mr. Fine, does not in any way affect the question at issue in this action. Therefore the court did not err in its direction to the jury as to what took place at his office. Nor does the fact that the second endeavor fell through at all affect the plaintiff's right to commissions. He had brought the minds of the parties to meet on the terms embraced in the informal agreement, and, conceding that the parties subsequently agreed to modify those terms by requiring all cash, (and defendant admits it was not until after the meeting at Mr. Dexheimer's office that this was insisted upon,) and conceding that it then appeared that the purchaser was unable to fulfill these new conditions, it in no way affected the plain-

tiff's rights. At the utmost, all that could be required of the broker was that the purchaser should be ready and willing to enter into a contract on the terms of the informal contract, and it does not appear that at Mr. Doll's office the purchasers were unwilling or unable to do that. After Mr. Fine, the purchaser, had testified that at Mr. Dexheimer's office he was ready and willing to carry out the contract, and had the $450 there to complete the $500 agreed upon as a deposit, he was cross-examined as to his ability to pay $15,000 in cash then and at that time, and finally, when the witness explained that his contract required only $11,000 to be paid in cash, but only $500 on that occasion, he was asked whether he had $10,-500, which question was excluded. It was plainly immaterial whether he had or not. It was not required on that occasion. The witness testified that he could have raised it, and would have been able to pay it at the time when it was required, which was 90 days off. Of course, the question as to what banks he had his money in was even less admissible, because it would have made no difference whether or not he had any money on deposit in any bank at that time. He had the $450 which was required of him at that time, and the testimony is clear that he was of sufficient responsibility to have raised the amount necessary when the 90 days had expired. The judgment should therefore be affirmed, with costs. All concur.