## HOLLIDAY v. ROXBURY DISTILLING CO.

(Supreme Court, Appellate Division, First Department.    March 5, 1909.)

1. BROKERS (§ 60*)—COMMISSIONS—RIGHT.
    As a general rule, brokers employed to procure a loan are not entitled to a commission therefor until the loan is made.
    [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 91; Dec. Dig. § 60.*]

2. BROKERS (§ 63*)—COMMISSIONS—DEFAULT OF PRINCIPAL.
    While one employing a broker to procure a loan on certain securities may be liable for breach of contract if the securities are not as valuable as he supposed and represented, so as to prevent him from obtaining the loan, the broker would not be entitled to recover commissions as for the full performance of the contract.
    [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 79, 81, 94–96; Dec. Dig. § 63.*]

3 EVIDENCE (§ 318*)—HEARSAY.
    An affidavit of plaintiff's assignor as to declarations of an officer of a bank, which plaintiff claimed was willing to make a loan to defendant secured by a pledge of pure whisky, which loan plaintiff's assignor had agreed to procure, that the bank was ready and able to make the loan, but discovered that the whisky was musty, and not pure, as represented, was hearsay, and not competent evidence of those facts.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1199; Dec. Dig. § 318.*]

4. EVIDENCE (§ 264*)—ADMISSIONS—PROOF—CONSTRUCTION.
    Statements by defendant that a lot of the whisky in its warehouse was musty, and that a suit was pending against it for selling musty whisky, was not an admission that bonded whisky, which defendant had agreed to offer as security for a loan to be procured by plaintiff, was musty; defendant not having identified any particular stock or quantity of whisky which it intended to pledge.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1028; Dec. Dig. § 264.*]

5. BROKERS (§ 86*)—ACTIONS FOR COMPENSATION—SUFFICIENCY OF EVIDENCE—SECURITY.
    In an action for commissions claimed for procuring one ready to make a loan to defendant, if the whisky which defendant offered as security had been pure whisky as represented, competent evidence held not to show that the whisky which defendant intended to pledge was musty.
    [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116, 117; Dec. Dig. § 86.*]

Appeal from Special Term, New York County.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Ross C. Holliday against the Roxbury Distilling Company. From an order denying a motion to vacate a warrant of attachment, defendant appeals. Reversed, and motion granted.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

John Vernour Bouvier, Jr. (John B. Doyle and Dudley Davis, on the brief), for appellant.

Walter H. Griffin, for respondent.

LAUGHLIN, J. This is an action to recover commissions alleged to have been earned by the plaintiff's assignor, one Proctor, in procuring a loan of $400,000 for the defendant. The loan was not consummated; but the plaintiff claims that his assignor procured a party ready, able, and willing to make the loan upon the terms upon. which he was authorized to procure it, and that it was not made owing to misrepresentations on the part of defendant with respect to the security to be furnished therefor. The plaintiff alleges that the defendant was to secure the loan "by a stock of good, pure whisky in government bond as collateral, and by $200,000 of the first-mortgage 6 per cent. gold bonds of the defendant as additional security, if required." The plaintiff failed to present, on his application for the warrant of attachment, any competent evidence that his assignor procured a party ready, able, and willing to make the loan on the terms proposed, even if that would have been sufficient. The plaintiff presented the affidavit of his assignor to the effect that, pursuant to negotiations had by the latter with the Hibernian Banking Association of Chicago, that association was ready, able, and willing to make the loan, and that it had unimpaired capital and a surplus of over $2,000,000; that he called on the banking association to make final arrangements, and was informed by the vice president that "although the bank was able, ready, and willing to make the loan, and wanted to do the business, yet the bank had discovered that one-half of the whisky which the defendant had offered to pledge as collateral to the said loan was musty, and was not good and pure, and for that reason they would not make said loan." This is the only evidence presented tending to show that plaintiff procured a party able, ready, and willing to make the loan.

We are of opinion that the evidence is insufficient to establish those facts. The affidavit of the plaintiff's assignor with respect to the declarations of the vice president of the Hibernian Banking Association on that subject was mere hearsay, and it afforded no proof that the banking association was ready, able, and willing to make the loan. The general rule applicable to the employment of brokers to procure a loan is that their commissions are not earned unless the loan is made (Crasto v. White, 52 Hun, 473, 5 N. Y. Supp. 718; Ashfield v. Case, 93 App. Div. 452, 87 N. Y. Supp. 649; Duckworth v. Rogers, 109 App. Div. 168, 95 N. Y. Supp. 1089); and while this rule probably would not be applicable in the case at bar, it being alleged that the negotiations fell through on account of defendant's misrepresentations as to the security to be given, it emphasizes the importance of having most satisfactory proof of the ability, readiness, and willingness of the par-

ty to make the loan, and that the failure to consummate the same was solely owing to the failure of the broker's principal. In other words, there may be a liability for a breach of a contract where a person, after employing a broker to make a loan on certain securities, discovers that his securities are not as valuable as he supposed, and that he would be unable to perform a contract to furnish securities for a loan according to his representations to his broker; but that would not afford a basis for a recovery by the broker of commissions as for full performance on his part. The vice president of the banking association may not have been authorized to make the loan, and, notwithstanding the surplus shown, the money may not have been on hand or procurable within a reasonable time.

Moreover, there is no competent evidence that the whisky which defendant intended to furnish as security was musty. We merely have the declaration of the vice president of the Hibernian Banking Association, made to plaintiff's assignor, that the banking association "had discovered" that more than one-half of the whisky which defendant offered to pledge was musty, and was not good and pure, and that it refused on that ground to make the loan. This was merely hearsay. There is no evidence that defendant identified any stock or quantity of whisky as the whisky it intended to offer as security, nor is there any evidence that it did not have a stock of whisky somewhere in government bond that would answer the requirements of its contract with the broker. We have not overlooked the fact that plaintiff's assignor states in his affidavit that, after the loan had been refused on the ground stated, he called on the agent of defendant at Chicago and was informed by him "that a lot of the whisky of the defendant that they had in their warehouse was musty," and that a suit was then pending against defendant to recover $25,000 on account of an alleged sale of musty whisky. This does not supply the material facts. It is not an admission concerning the security.

It follows that the order should be reversed, with $10 costs and disbursements, and motion to vacate the warrant of attachment granted, with $10 costs. All concur.